IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:24-cv-520

| | |
|---|---|
| BRENDA CORBIN;<br>DAN CORBIN;<br>ADAM HALL;<br>TERRAH HALL;<br>ANNA HALL;<br>DELL STRICKLAND;<br>ROBERT MELVIN JR.;<br>TANA FAIRCLOTH-MELVIN;<br>HALTRY INVESTMENTS LLC;<br>BILLY GROOVER;<br>FRANCIS GROOVER;<br>CLAUDE SCOTT IV;<br>APRIL SCOTT;<br>CHRISTOPHER WILLIAMS;<br>LAUREN WILLIAMS,<br><br>     Plaintiffs,<br><br>  v.<br><br>3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co.;<br>AGC CHEMICALS AMERICAS INC.;<br>AGC, INC., f/k/a Asahi Glass Co., Ltd.;<br>ARCHROMA MANAGEMENT, LLC;<br>ARCHROMA U.S., INC.;<br>ARKEMA, INC.;<br>BASF CORPORATION;<br>BUCKEYE FIRE EQUIPMENT COMPANY;<br>CARRIER GLOBAL CORPORATION;<br>CHEMDESIGN PRODUCTS, INC.;<br>CHEMGUARD, INC.;<br>CHEMICALS INCORPORATED;<br>CHUBB FIRE, LTD.;<br>CLARIANT CORPORATION;<br>CORTEVA, INC.;<br>DEEPWATER CHEMICALS, INC.; | **NOTICE OF REMOVAL** |

JOHN DOE DEFENDANTS 1-49;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
E.I DUPONT DE NEMOURS AND COMPANY;
KIDDE PLC, INC.;
NATION FORD CHEMICAL COMPANY;
NATIONAL FOAM, INC.;
RAYTHEON TECHNOLOGIES CORPORATION,
f/k/a United Technologies Corporation;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS LP; and
UTC FIRE & SECURITY AMERICAS
CORPORATION, INC.,

Defendants.

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court for Cumberland County, North Carolina (the "Cumberland County Superior Court"), to the United States District Court for the Eastern District of North Carolina. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. Plaintiffs seek to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiffs allege has resulted in contamination.

2. Specifically, Plaintiffs allege that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and

2

Case 5:24-cv-00520-M    Document 1    Filed 09/11/24    Page 2 of 20

perfluorooctane sulfonic acid ("PFOS"), and that the release of those substances into Plaintiffs' water supplies caused them to sustain property damage and personal injuries.

3. At least some of the AFFF that gives rise to Plaintiffs' claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. This action was filed on August 7, 2024, in the Cumberland County Superior Court, bearing Case No. 24-CVS-4784 (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 113(a) and 1441(a) because the Cumberland County Superior Court is located within the Eastern District of North Carolina.

5. Tyco Fire Products LP was served with the Summons and Complaint on August 12, 2024. Chemguard, Inc. was served with the Summons and Complaint on August 13, 2024. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6. Plaintiffs generally allege that certain Defendants, including Tyco, have designed,

3

manufactured, marketed, distributed, and/or sold AFFF that contains PFAS. Plaintiffs allege that the use of AFFF has contaminated their water supplies and caused them to sustain property damage, diminution in property value, and personal injury.

7. Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

8. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Cumberland County Superior Court.

9. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10. Tyco reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

11. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *Papp*, 842 F.3d at 812; *accord*

*Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

12. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

13. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-

mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A. **MilSpec AFFF**

14. The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel. Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at larger civilian airports. The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15. The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969,

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

6

and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16. From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants. Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations. Indeed, the AFFF MilSpec recognizes that it is

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

7

Case 5:24-cv-00520-M    Document 1    Filed 09/11/24    Page 7 of 20

not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

### B. All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.

#### 1. The "Person" Requirement Is Satisfied.

17. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

#### 2. The "Acting Under" Requirement Is Satisfied.

18. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original).

19. The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of Plaintiffs' claims stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal

quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

20. In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied.

21. The third requirement, that the lawsuit be "for or related to" the defendant's actions taken "under color of federal office," is satisfied when there is a "connection or association" between the defendant's challenged actions and the federal office. *Papp*, 842 F.3d at 813. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9]

22. Here, Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries. Tyco contends that some of the AFFF giving rise to Plaintiffs' claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications. As a result, Plaintiffs' claims against Tyco are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same). It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. The "Colorable Federal Defense" Requirement Is Satisfied.

---

[9] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

23. The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

24. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

25. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Tyco has satisfied these elements for purposes of removal.

26. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products

but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

27. With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

28. Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[10] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

to have adverse effects environmentally."[11] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13] If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required. *See Ayo*, 2018 WL 4781145, at *14; MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

---

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

29. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

30. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiffs that were caused at least in part by Tyco's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

31. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, Tyco hereby removes this action from the Superior Court of Cumberland County, North Carolina, to this Court.

Respectfully submitted,

Dated: September 11, 2024

*/s/ Christopher J. Blake*
Christopher J. Blake
N.C. State Bar No. 16433
**Nelson Mullins Riley & Scarborough LLP**
301 Hillsborough St, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3808
Email: chris.blake@nelsonmullins.com

*Attorneys for Defendants Tyco Fire Products LP and Chemguard, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

A copy of same was served upon counsel of record by <u>electronic mail and United States mail, first class, postage prepaid, as follows</u>:

J. Scott Flowers
**HUTCHENS LAW FIRM LLP**
4317 Ramsey St.
Fayetteville, NC 28311
Scott.flowers@hutchenslawfirm.com

Scott Summy
Brett Land
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
ssummy@baronbudd.com
bland@baronbudd.com

Philip F. Cossich, Jr.
Brandon J. Taylor
Christina M. Cossich
Andrew Cvitanovic
Luana N. Smith
**COSSICH, SUMMICH, PARSIOLA & TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
pcossich@cossichlaw.com
btaylor@cossichlaw.com
ccossich@cossichlaw.com
acvitanovic@cossichlaw.com
lsmith@cossichlaw.com

*Counsel for Plaintiffs*

<u>And by United States mail, first class, postage prepaid to</u>:

Daniel L. Ring
Tyler D. Alfermann
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
dring@mayerbrown.com

talfermann@mayerbrown.com
*Counsel for Defendant 3M Company*

David R. Erickson
Brent Dwerlkotte
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kanasas City, MO 64108
derickson@shb.com
bdwerlkotte@shb.com
*Counsel for Defendants E.I. DuPont de Nemours & Company,*
*The Chemours Company FC, LLC, and The Chemours Company*

Kat Hacker
**BARTLIT BECK LLP**
1801 Wewatta, Suite 1200
Denver, CO 80202
kat.hacker@bartlitbeck.com
*Counsel for Defendants Corteva Inc and DuPont de Nemours Inc.*

Peter Condron
**CROWELL & MORING**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-259
pcondron@crowell.com
*Counsel for Defendant AGC Chemicals Americas Inc. and AGC, Inc.*

Heidi Levine
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Hlevine@sidley.com
*Counsel for Defendant Arkema Inc.*

Melanie Black Dubis
Charles Raynal
**PARKER POE ADAMS & BERNSTEIN LLP**
301 Fayetteville Street, Suite 400
Raleigh, NC 27601
melaniedubis@parkerpoe.com
Charlesraynal@parkerpoe.com
*Counsel for Defendants Archroma U.S. Inc. Archroma Management, LLC and Clariant Corporation*

John Wellschlager
**DLA PIPER LLP (US)**

18

Case 5:24-cv-00520-M    Document 1    Filed 09/11/24    Page 18 of 20

Harbor East
650 S. Exeter Street
Baltimore, MD 21202-4576
John.wellschlager@dlapiper.com
*Counsel for Defendant BASF Corporation*

Michael L. Carpenter
**GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.**
Post Office Box 2636
Gastonia, North Carolina 28053-2636
mcarpenter@gastonlegal.com
*Counsel for Defendant Buckeye Fire Equipment Company*

Jonathan I. Handler
Keith H. Bensten
**DAY PITNEY LLP**
One Federal Street, 29th Floor
Boston, MA 02110
jihandler@daypitney.com
kbensten@daypitney.com
*Counsel for Defendants Carrier Global Corporation, Kidde PLC, Inc., Chubb Fire, Ltd. And Raytheon Technologies Corporation*

Jonathan Blakley
**GORDON REES SCULLY MANSUKHANI, LLP**
One North Franklin, Suite 800
Chicago, IL 60606
jblakley@grsm.com
*Counsel for Defendant ChemDesign Products Inc.*

John Parker
Oliver Twaddell
**GOLDBERG SEGALLA LLP**
711 Third Avenue, Suite 1900
New York, NY 10017
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
*Counsel for Defendant Chemicals, Inc*

Kurt D. Weaver
**WOMBLE BOND DICKSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
kurt.weaver@wbd-us.corn
*Counsel for Defendant Deepwater Chemicals, Inc.*

19

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
**SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P**
Post Office Box 2611
Raleigh, North Carolina 27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
*Counsel for Defendant Dynax Corporation*

Keith E. Smith
**GREENBERG TRAURIG, LLP**
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
smithkei@gtlaw.com
*Counsel for Defendant National Foam Inc.*

Ethan R. Ware
**WILLIAMS MULLEN**
P. O. Box 8116
Columbia, SC 29202
eware@williamsmullen.com
*Counsel for Defendant Nation Ford Chemical Company*

UTC Fire & Security Americans Corporation, Inc.
c/o Registered Office
15720 Brixham Hill Ave #300
Charlotte, NC 28277

          **NELSON MULLINS RILEY & SCARBOROUGH LLP**

          By: */s/ Christopher J. Blake*
             Christopher J. Blake
             N.C. State Bar No. 16433
             301 Hillsborough Street, Suite 1400
             Raleigh, North Carolina 27603
             Telephone: (919) 329-3800
             Facsimile: (919) 329-3799
             chris.blake@nelsonmullins.com

          *Counsel for Tyco Fire Products, LP and Chemguard, Inc.*